Filed 6/21/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| WESTWOOD HOMES, INC. et al., | C089127 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV0029131) |
| v. | |
| AGCPII VILLA SALERNO MEMBER, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Placer County, Michael A. Jacques, Court Commissioner. Affirmed in part and reversed in part.

Downey Brand, Jamie P. Dreher, and David M. Fox for Plaintiffs and Appellants.

The Law Offices of Ronald Richards & Associates, Ronald Richards, and Morani Stelmach for Defendant and Respondent AGCPII Villa Salerno Member, LLC.

Daponde Simpson Rowe and Anthony R. Eaton for Defendant and Respondent Sierra de Montserrat Owners Association.

1

Appellants Westwood Homes, Inc., Lucille Westwood Limited Partnership, and Deborah Westwood appeal from the denial of their joint motion for attorney fees. Westwood Homes and Lucille Westwood Limited Partnership argue they are entitled to attorney fees for defeating motions to amend judgments against a related entity, Westwood Montserrat, Ltd., to add them as alter ego judgment debtors. Deborah Westwood argues the trial court erred in denying her unnoticed oral request for an order releasing an undertaking to her. We affirm in part, reverse in part, and remand for a determination of reasonable attorney fees.

## I. BACKGROUND

Westwood Montserrat, Ltd., a real estate developer, arbitrated claims against AGK Sierra de Montserrat, L.P., Sierra de Montserrat Owners Association, and Robert C. and Jennielyn B. Kincade (together, the Kincades) pursuant to an arbitration provision in a declaration of covenants, conditions, restrictions, and easements (CC&Rs) for a planned residential community in Placer County.[1] (*Westwood Montserrat, Ltd. v. AGK Sierra de Montserrat, L.P.* (Sept. 23, 2016, C080395) [nonpub. opn.].) The arbitrator found Sierra de Montserrat Owners Association and the Kincades to be prevailing parties for purposes of an attorney fees provision in the CC&Rs and ordered Westwood Montserrat to pay their attorney fees and costs.[2] (*Ibid.*) The trial court confirmed the arbitration award and entered judgments for Sierra de Montserrat Owners Association and the Kincades in the amounts of $183,374 and $124,764, respectively. (*Ibid.*) The Kincades assigned the judgment in their favor to AGCPII Villa Salerno Member, LLC (AGCPII).

---

[1] Westwood Montserrat is not a party to this appeal.

[2] As between Westwood Montserrat Ltd. and AGK Sierra de Montserrat L.P., the arbitrator found there was no prevailing party and ordered each of them to bear their own attorney fees and costs. (*Westwood Montserrat, Ltd. v. AGK Sierra de Montserrat, L.P., supra*, C080395.)

2

Westwood Montserrat unsuccessfully challenged the judgments in this court. (*Westwood Montserrat, Ltd. v. AGK Sierra de Montserrat, L.P., supra*, C080395.) The parties then returned to the trial court, where Sierra de Montserrat Owners Association and AGCPII filed motions to amend their respective judgments to add third parties Westwood Homes and Lucille Westwood Limited Partnership as alter ego judgment debtors pursuant to Code of Civil Procedure section 187.[3] The trial court denied the motions.

Westwood Homes and Lucille Westwood Limited Partnership then moved as prevailing parties under Civil Code section 1717 (section 1717) to recover $34,212 in attorney fees incurred in defeating the motions to amend the judgments. Deborah Westwood, a member and partner of Westwood Homes and Lucille Westwood Limited Partnership, contemporaneously moved pursuant to Code of Civil Procedure section 720.160 to recover $43,450 in attorney fees incurred in establishing a third party claim of superior right of possession to real property on which AGCPII had obtained a writ of execution to enforce the judgment. During the hearing on the motion, Deborah Westwood's counsel requested that the trial court order an undertaking posted by AGCPII in the amount of $10,000 released to her. The trial court denied both motions, and the request to release the undertaking. This appeal timely followed.

## II. DISCUSSION

A.   *The Trial Court Erred in Denying Westwood Homes and Lucille Westwood Limited Partnership's Motion for Attorney Fees*

Westwood Homes and Lucille Westwood Limited Partnership argue the trial court erred in denying their motion for attorney fees under section 1717. They argue they are entitled to fees because the unsuccessful motions to amend the judgment by Sierra de

---

[3] Westwood Homes and Lucille Westwood Limited Partnership are partners in Westwood Montserrat.

Montserrat Owners Association and AGCPII were "action[s] on a contract" within the meaning of the statute, and Sierra de Montserrat Owners Association and AGCPII would have been entitled to fees from them had Sierra de Montserrat Owners Association and AGCPII prevailed. Sierra de Montserrat Owners Association and AGCPII respond that section 1717 does not apply, because a motion to amend a judgment is a procedural device to enforce a judgment, rather than a substantive claim for relief. The parties' contentions require us to determine whether there was a legal basis for an award of attorney fees, a question we review de novo. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751 (*Mountain Air*).)

Code of Civil Procedure section 1021 codifies the "American rule" that each party to litigation ordinarily pays its own attorney fees. (*Mountain Air, supra,* 3 Cal.5th at p. 751.) But section 1717 provides an exception where the parties enter into an enforceable agreement authorizing an award of fees. Such an agreement may authorize attorney fees to the prevailing party in any litigation between the parties, whether the litigation sounds in contract or tort. (*Mountain Air, supra,* at p. 751.) Where the litigation sounds in contract, however, the agreement must comply with section 1717, which provides, in pertinent part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717, subd. (a).)

" ' "California courts 'liberally construe "on a contract" to extend to any action "[a]s long as an action 'involves' a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit." ' " ' " (*In re Tobacco Cases I* (2011) 193 Cal.App.4th 1591, 1601.) "An action (or cause of action) is 'on a contract' for purposes of section 1717 if (1) the action (or cause of action)

4

'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fee clause." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 241-242.)

Our Supreme Court has long recognized that section 1717 "was enacted to establish mutuality of remedy where [a] contractual provision makes recovery of attorney's fees available for only one party [citations], and to prevent oppressive use of one-sided attorney's fees provisions." (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128 (*Reynolds Metals*).) Therefore, a party prevailing on a contract claim generally is entitled to fees under section 1717 " ' "whenever that party would have been liable under the contract for attorney fees had the other party prevailed." ' " (*Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1168.)

Our Supreme Court extended section 1717's reciprocity principle to nonsignatory litigants in *Reynolds Metals*. (*Reynolds Metals, supra,* 25 Cal.3d at p. 128.) There, the signatory plaintiff, a supplier of aluminum goods, sued nonsignatory defendants, the shareholders, and directors of two bankrupt companies, to recover on two promissory notes. (*Id.* at p. 127.) The promissory notes provided for recovery of collection costs, including attorney fees in the event of a default. (*Ibid.*) Following a bench trial, the trial court rejected the plaintiff's alter ego allegations, entered judgment in favor of the defendants, and awarded them attorney fees. (*Ibid.*) The Supreme Court affirmed the award of attorney fees, stating: "Had plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the corporation [citation], defendants would have been liable on the notes. Since they would have been liable for attorney's fees pursuant to the fees provision had plaintiff prevailed, they may recover attorney's fees pursuant to section 1717 now that they have prevailed." (*Id.* at p. 129.) The parties appear to agree that Westwood Homes and Lucille Westwood Limited Partnership would have been

5

entitled to attorney fees under section 1717, as construed by *Reynolds*, had they defeated the same alter ego allegations prior to the entry of judgment.

Two recent cases have extended the Supreme Court's reasoning in *Reynolds Metals* to cases in which alter ego claims were made later, after the entry of judgment against the contracting party.  (See *MSY Trading Inc. v. Saleen Automotive, Inc.* (2020) 51 Cal.App.5th 395 (*MSY Trading*); *347 Group, Inc. v. Philip Hawkins Architect, Inc.* (2020) 58 Cal.App.5th 209 (*347 Group*).)  These cases, which we find dispositive, are described in detail below.

In *MSY Trading*, the plaintiffs sued an entity called SMS Retail Corona for breach of contract.  (*MSY Trading, supra,* 51 Cal.App.5th at p. 399.)  The action settled pursuant to an agreement that required SMS Retail Corona and its parent company, SMS Signature Cars, Inc., to make payments according to a payment schedule.  (*Ibid.*)  In the event the payments were not made, the plaintiffs would be entitled to a stipulated judgment against SMS Retail Corona, SMS Signature Cars, Inc., and Saleen Automotive, Inc.  (*Ibid.*)  The plaintiffs would also be entitled to attorney fees incurred in enforcing the settlement agreement.  (*Ibid.*)

The defendants made initial payments pursuant to the payment schedule and then stopped.  (*MSY Trading, supra,* 51 Cal.App.5th at p. 399.)  The plaintiffs moved to enforce the settlement agreement in the original action, seeking the unpaid balance and attorney fees.  (*Id.* at p. 400.)  The trial court entered judgment against SMS Retail Corona and SMS Signature Cars, Inc.  (*Ibid.*)  The plaintiffs then moved to amend the judgment to add Saleen Automotive, Inc., Saleen Signature Cars, Inc., and Steve Saleen (Steve), chief executive officer of both entities, as alter egos of the judgment debtors.  (*Ibid.*)  The trial court granted the motion as to Saleen Signature Cars, but denied the motion without prejudice as to Steve and Saleen Automotive, Inc.  (*Ibid.*)

The plaintiffs then filed a second action, seeking to hold Steve and Saleen Automotive liable on the judgment in the first action as alter egos of the judgment

debtors. (*MSY Trading, supra,* 51 Cal.App.5th at p. 400.) Following a bench trial, the trial court determined that Saleen Automotive was an alter ego of the judgment debtors, but Steve was not. (*Ibid.*) Steve then moved for attorney fees under section 1717. (*MSY Trading, supra,* at p. 400.) The trial court granted the motion, and the court of appeal affirmed. (*Id.* at pp. 388-400.)

The *MSY Trading* court began its analysis by observing that "Steve certainly would have been entitled to recover attorney fees" had the plaintiffs brought the same alter ego allegations against him in the original action, and he prevailed there. (*MSY Trading, supra,* 51 Cal.App.5th at p. 402.) The court then considered the procedural options available to parties asserting alter ego liability. (*Ibid.*) The court explained: "The first option is to sue the alter ego directly in an action for breach of contract, as occurred in *Reynolds Metals.* Another is to first obtain a judgment for breach of contract against the signatories to the contract, followed by a motion to amend the judgment to add the alter egos as defendants. [Citations.] Still another is, after obtaining a judgment against the signatories, to institute an independent action against the alter egos, which is the option plaintiff chose here. [Citation.] These different procedural vehicles, however, are identical in *substance*: in all three, the proof of alter ego is the same." (*Id.* at pp. 402-403.)

The *MSY Trading* court found no reason to treat alter ego claims made in an initial lawsuit differently from alter ego claims made after the judgment. (*MSY Trading, supra,* 51 Cal.App.5th at p. 403.) The court observed that alter ego claims proceed from the theory that, "in the eyes of the law, the alter ego *was* a party, albeit by a different name." (*Ibid.*; see also *NEC Electronics Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 778 ["Judgments are often amended to add judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor. [Citations.] This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant"].) "To give

7

effect to the principles inherent in *Reynolds Metals* and Civil Code section 1717," the court explained, "we employ a similar analysis for a prevailing alleged alter ego: it is as though the alleged alter ego *was* a party to the original lawsuit, and prevailed." (*MSY Trading, supra,* at p. 403.) "Consequently," the court continued, "a postjudgment, independent action to establish alter ego liability for a judgment on a contract is itself an action on the contract." (*Ibid.*) Were the rule otherwise, the court reasoned, plaintiffs would have incentives to sue judgment proof defendants, obtain judgments, and then sue their alter egos in subsequent enforcement proceedings. In the court's view: "This result serves no valid purpose and highlights the arbitrariness of awarding fees—or not— simply based on the timing of the alter ego claim." (*Id.* at p. 404.) "Instead," the court concluded, "the better approach is to regard an alter ego claim as being on the contract under Civil Code section 1717 regardless of which procedural vehicle the plaintiff employs." (*Ibid.*)

A similar issue arose in *347 Group.* There, the plaintiff sued a corporate entity, Philip Hawkins Architect, Inc. (Architect, Inc.), for breach of contract. (*347 Group, supra,* 58 Cal.App.5th at p. 212.) The plaintiff also sued Philip Hawkins (Hawkins), seeking to establish that he was an alter ego and liable under the contract with Architect, Inc. (*Ibid.*) Architect, Inc. declared bankruptcy, and the plaintiff filed an amended complaint asserting causes of action for breach of contract, common counts, fraudulent conveyance, and conspiracy against Architect, Inc. and Hawkins. (*Ibid.*) A default judgment was entered against Architect, Inc., and the parties stipulated to dismiss the contract cause of action against Hawkins. (*Ibid.*) Following a trial, the trial court found that Hawkins was not liable as an alter ego to pay the amount owing under the contract between the plaintiff and Architect, Inc. under either a fraudulent conveyance or conspiracy theory. (*Ibid.*) The trial court then denied Hawkins's motion for attorney fees, finding that he only prevailed on tort claims. (*Id.* at p. 213.)

8

Another panel of this court reversed, relying on *MSY Trading.* (*347 Group, supra,* 58 Cal.App.5th at p. 214.) The *347 Group* court quoted extensively from *MSY Trading* and then adopted the reasoning of that case to conclude that Hawkins was entitled to attorney fees under section 1717. (*347 Group, supra,* at p. 214.) The court explained: "because [the plaintiff's] alter ego action was on the contract and Architect, Inc., the party Hawkins was alleged to be the alter ego of, was liable for attorney fees under the contract, Hawkins is entitled to attorney fees." (*Id.* at p. 215.)

These three cases—*Reynolds Metals*, *MSY Trading*, and *347 Group*—compel reversal here. Had Sierra de Montserrat Owners Association and the Kincades asserted counterclaims alleging alter ego liability in the original action, and lost, then Westwood Homes and Lucille Westwood Limited Partnership would be entitled to attorney fees under *Reynolds Metals.* (*Reynolds Metals, supra,* 25 Cal.3d at p. 129 ["Had plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the corporation[ citation], defendants would have been liable on the notes. Since they would have been liable for attorney's fees pursuant to the fees provision had plaintiff prevailed, they may recover attorney's fees pursuant to section 1717 now that they have prevailed"].) Had Sierra de Montserrat Owners Association and AGCPII (as assignee of the Kincades) brought an independent action on the judgment to recover attorney fees from Westwood Homes and Lucille Westwood Limited Partnership as alter egos of Westwood Montserrat, and lost, Westwood Homes and Lucille Westwood Limited Partnership would be entitled to attorney fees under *MSY Trading* and *347 Group.* (*MSY Trading, supra,* 51 Cal.App.5th at p. 403 ["a postjudgment, independent action to establish alter ego liability for a judgment on a contract is itself an action on the contract"]; *347 Group, supra,* 58 Cal.App.5th at p. 215 [same].) That Sierra de Montserrat Owners Association and AGCPII chose a different procedural approach—a motion to amend the judgment under Code of Civil Procedure section 187—does not change the substance of the trial court's order. (*MSY Trading, supra,* at p. 403 ["These

9

different procedural vehicles . . . are identical in *substance*: in all three, the proof of alter ego is the same"]; *347 Group, supra,* at pp. 214-215 [same].)  So far as the substance of the alter ego allegations is concerned, it is as though Westwood Homes and Lucille Westwood Limited Partnership were parties to the original action, and prevailed.  (*MSY Trading, supra,* at p. 403 ["it is as though the alleged alter ego *was* a party to the original lawsuit, and prevailed"]; *347 Group, supra,* at p. 215 [same].)  It follows that Westwood Homes and Lucille Westwood Limited Partnership may be viewed as prevailing parties under section 1717 and entitled to attorney fees under the CC&Rs.  (*MSY Trading, supra,* at p. 404 ["the better approach is to regard an alter ego claim as being on the contract under . . . section 1717 regardless of which procedural vehicle the plaintiff employs"]; *347 Group, supra,* at p. 215 [same].)  We therefore reverse that portion of the trial court's order denying Westwood Homes and Lucille Westwood Limited Partnership's motion for attorney fees and remand for a determination of reasonable fees.

B.      *The Trial Court Properly Denied Deborah Westwood's Request for the Undertaking*

Deborah Westwood separately contends the trial court erred in denying her request for AGCPII's $10,000 undertaking.  We perceive no error.

As indicated above, Deborah Westwood moved pursuant to Code of Civil Procedure section 720.160 to recover $43,450 in attorney fees incurred in establishing her third-party claim.  With respect to Deborah Westwood's motion, the notice of motion states:  "Specifically, pursuant to Code of Civil Procedure section 720.160, Ms. Westwood moves to recover $43,580 in attorneys' fees she incurred in filing her third party claim and defeating the petition on this third party claim filed by Judgment Creditor AGCPII . . . .  Ms. Westwood makes her motion on the grounds that AGCPII filed an undertaking to indemnify Ms. Westwood against 'any loss, liability, damages, costs, and attorney's fees, incurred by reason of the enforcement proceedings,' which became payable to Ms. Westwood after the Court issued judgment in [her] favor finding her third

10

party claim to be valid. While this undertaking was insufficient to cover the full extent of Ms. Westwood's fees . . . the Court has the discretion to award fees above the amount of the initial undertaking. As such, Ms. Westwood is entitled to the full amount of her attorneys' fees incurred in litigating the third party claim from AGCPII and [Sierra de Montserrat Owners Association]." AGCPII opposed Deborah Westwood's request for attorney fees but did not anticipate or address any request for an order releasing the undertaking.

During the hearing on the motion, Deborah Westwood's counsel argued that, if the trial court were inclined to deny the motion for attorney fees, then the court should order that the undertaking be released. The trial court took the matter under submission to consider whether such relief had been requested in the notice of motion. The trial court then denied the request on due process grounds, finding the issue had not been raised in the notice of motion. (Code Civ. Proc., § 1010 ["Notices must be in writing, and the notice of a motion, other than for a new trial, must state when, and the grounds upon which it will be made, and the papers, if any, upon which it is to be based"].) We cannot say the trial court erred.

Although Deborah Westwood was not obliged to state the grounds for her motion with "minute particularity" (*Lencioni v. Dan* (1954) 128 Cal.App.2d 105, 108), she was required to provide AGCPII with adequate notice and an opportunity to respond. (*Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1279 ["The essence of procedural due process is notice and an opportunity to respond].) The notice of motion makes mention of the undertaking but does not say anything about releasing the undertaking as a partial fee award. Instead, the notice of motion relies on Code of Civil Procedure section 720.160, which deals with undertakings by creditors, as authority for her motion for "the

11

full amount of her attorneys' fees."**4**  Although a motion for attorney fees in the amount of $43,450 might reasonably be said to encompass a request for fees in the lesser amount of $10,000, we cannot say that a motion for attorney fees under the ostensible authority of Code of Civil Procedure section 720.160 encompasses a request for release of an undertaking under that statute.  We therefore reject the claim of error.  We note, however, that the trial court denied Deborah Westwood's request "without prejudice to it being properly sought."  Deborah Westwood is thus free to seek an order releasing the undertaking by way of a properly noticed motion.  We express no opinion as to how the trial court should rule on such a motion.

---

**4**  As relevant here, Code of Civil Procedure section 720.160, subdivision (c) provides that an undertaking given by a creditor in connection with a third-party claim shall "[b]e made in favor of the third person" and "[i]ndemnify the third person against any loss, liability, damages, costs, and attorney's fees, incurred by reason of the enforcement proceedings."

## III.  DISPOSITION

We affirm that portion of the trial court's order denying Deborah Westwood's motion for attorney fees.  We reverse that portion of the trial court's order denying Westwood Homes, Inc. and Lucille Westwood Limited Partnership's motion for attorney fees and remand for a determination of reasonable fees.  Westwood Homes, Inc. and Lucille Westwood Partnership shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

_____

RENNER, J.

We concur:

/S/

_____

BLEASE, Acting P. J.

/S/

_____

HOCH, J.